GREGORY SMTH & ASSOCIATES
225 Broadway, Suite 3601
New York, New York 10007
(212) 267-2042


November 23, 2007

**VIA ECF**

The Honorable Robert M. Levy
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Fabio Taveras v. City of New York, et al.,
              06-CV-3807 (SJ) (RML)

Dear Magistrate Judge Levy:

       The undersigned represents plaintiff Fabio Taveras herein. This letter motion supplement is written pursuant to You Honor's ruling on November 21, 2007 to compel the City of New York to turn over certain discovery that is in their exclusive possession and control. Plaintiff was granted leave to narrow his *Monell* requests against the City of New York. Plaintiff now requests the following amended discovery pursuant to *Monell*. Under the narrowest discovery demand, plaintiff is entitled to discovery disclosing charges of false arrest against New York City police officers for the past ten (10) years and discipline pertaining thereto; and policies pertaining to false arrests claims resulting from an officer initiating a criminal charge. This information is exclusively in the defendant City of New York's possession. Plaintiff cannot be limited to precinct information for this purpose because in Detective Hughes' deposition he testified regarding his training and did not identify any training regarding initiating criminal charges. He testified that he didn't remember specific training at the Police Academy regarding the Constitution. (p.27 lines 3-11 attached).

       Det. Hughes further testified that when he was in the Police Academy (in approximately 1996) they did not teach him how to conduct investigations as a detective, just how to conduct a preliminary investigation (p.27, lines 18-23). After he was promoted he did not recall receiving additional training (p. 36 lines 17-21). The fact that the policymaker failure is above the level of the precinct on this narrow subject of how not to make a false arrest, is further demonstrated by Detective Hughes' testimony regarding the informality of the process of reviewing his charge (he was to obtain a verbal review from a Sergeant and could not identify any Sergeant on Tavares' arrest from paperwork or his memory) which was part of the general informal process of reviewing officers' charges. (pages 41-43

attached)—the issue is whether that informal review process complies with or emanates from any formal directive.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Escobar v. City of New York, 05-cv-3030 at page 4 (ENV)(CLP)(E.D.N.Y. 6-24-07) (internal quotations and citations omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury that the government as an entity is responsible...." *Monell v. N.Y.C. Dept. Social Services*, 436 U.S. 658, 694 (1978), "A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials. '[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell. ..." Poulsen *v. City of North Tonawanda*, 811 F. Supp. 884, 896 (W.D.N.Y. 1993) (citations omitted). The failure to train or supervise city employees may constitute the official policy or custom.

In that regard, Tavares proof addresses the issues that: (1) a policymaker knows "to a moral certainty" that police officers employees will confront a situation in which they will have to investigate whether or not to charge an individual with filing a false report; (2) the situation either presented the employee with "a difficult choice of the sort that training or supervision will make less difficult" or "there is a history of employees mishandling the situation;" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir.1992). Plaintiff should be allowed to pursue discovery in order to determine whether there was a practice of condoning false arrests, (evidenced perhaps by the failure to discipline for making a false arrest) or a pattern of police false arrests sufficient to require the police department to train and supervise police officers to assure that they don't make false arrests. *See Walker, id.* at page 300. Defendant City of New York is responsible for its Police Department's failure to adequately train its police officers and detectives on the subject of not making false arrests. *Black v. Stephens*, 662 F.2d 181, 191 (3d Cir. 1981)

Respectfully,

_____\\s\_____
Gregory G. Smith

cc:   Hillary Frommer, Esq. (via ECF)
      Naima Garvin, Esq. (via ECF)

Enclosure

2

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - x

FABIO S. TAVERAS,

                    Plaintiff,

        -against-


THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY DEPARTMENT OF
EDUCATION, DETECTIVE JUSTIN F. HUGHES,
Individually and as Detective of the New York
City Police Department, JOHN J. PATTAY,
Individually and as Custodian Engineer of the
Queens High School of Teaching and RAYMOND
ORTIZ, Individually and as Fireperson for
Defendant John J. Pattay,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - x
                    225 Broadway
                    New York, New York

                    May 10, 2007
                    10:21 a.m.
```

**DEPOSITION** of **DETECTIVE JUSTIN F. HUGHES**, a Defendant in the above-entitled action, held at the above time and place, pursuant to Notice, taken before Emma R. Hellman-Mass, a reporter and Notary Public within and for the State of New York.

                                        LEX 61476



**LEX REPORTING SERVICE, INC.**
Professional Reporting Since 1980
Offices throughout New York and New Jersey • Toll Free 800-608-6085

| | | |
|---|---|---|
| 1 | J. Hughes | 27 |

2   Q   All right.
3       In that law class that you
4   mentioned, did they talk to you about
5   the Constitution?
6           MS. FROMMER:  Objection.
7   A   Yes.
8   Q   What do you remember them saying?
9           MS. FROMMER:  Objection.
10          You can answer.
11  A   I don't remember specifics.
12  Q   What if anything did you learn
13  about the seizure of a person or of
14  property?
15          MS. FROMMER:  Objection.
16          You can answer.
17  A   I don't recall everything.
18  Q   In the Academy, did they teach
19  you about conducting investigations?
20          MS. FROMMER:  Objection.
21          You can answer.
22  A   Not as a detective, just a
23  preliminary investigation.
24  Q   Focusing your attention now on
25  the Academy in those first few months,

LEX REPORTING SERVICE
800-608-6085

or not?

        MS. FROMMER: Objection.

        You can answer.

A   Yes, if they last the 18 months.

Q   So if you get through the 18 months, then you were promoted?

        MS. FROMMER: Objection.

A   (No verbal response.)

Q   What happens to those who don't make it?

        MS. FROMMER: Objection.

        You can answer.

A   They go back to where they came or they go back to another unit.

Q   After you were promoted to detective, did you receive further training up until now?

        MS. FROMMER: Objection.

        You can answer.

A   Not that I can recall.

        Can you rephrase that question?

Q   Since you've been promoted to detective, have you taken any courses the likes of which you testified to

```
 1                        J. Hughes                        41
 2   fill out?
 3              MS. FROMMER:  Objection.
 4              You can answer.
 5       A   In the front of the book, it goes
 6   in order of the arrest.  Everybody, if
 7   you make an arrest, you go in and sign
 8   your name on the next line.  Then you
 9   have individual arrest page in the back.
10              MR. SMITH:  I'm going to call
11         for that arrest log.
12              MS. FROMMER:  We're going to
13         object, and you can put it in
14         writing.
15              MR. SMITH:  And the original
16         arrest page in the back for Mr.
17         Taveras.
18              MS. FROMMER:  You can put it
19         in writing.  We'll answer
20         accordingly.
21       Q   Is there anyone required to be
22   notified when there is an arrest?
23              MS. FROMMER:  Objection.
24              You can answer.
25       A   Yes.
```

J. Hughes                                          42

Q   Who was required to be notified?

A   A supervisor.

Q   Your direct supervisor?

A   No.

Q   Was that yes or no?

A   No.

Q   What supervisor are you referring to?

A   If the direct supervisor is there, he gets notified, but when he's off, there are covering supervisors.

Q   Is this a verbal notification or a written notification?

A   Verbal.

Q   Do you understand the reason for the notification?

    MS. FROMMER:  Objection.

    You can answer.

A   Yes.

Q   You can explain it.

    MS. FROMMER:  Objection.

    You can answer.

A   To verify the arrest.

Q   When you say "verify the arrest,"

```
 1                    J. Hughes                       43
 2    what do you mean?
 3         A    To verify that an arrest is being
 4    made, the validity of the arrest.
 5         Q    Do they ask you any questions
 6    when you say, I want to arrest Mr. X?
 7              MS. FROMMER:  Objection.
 8              You can answer.
 9         A    Sometimes.
10         Q    In giving this notification, is
11    there any protocol of all of the areas
12    that you have to cover in a verbal
13    notification that you give?
14              MS. FROMMER:  Objection.
15              You can answer.
16         A    Not that I know of.
17         Q    When you give this notification,
18    is it your understanding that your
19    arrests have to be approved?
20              MS. FROMMER:  Objection.
21              You can answer.
22         A    Yes.
23         Q    So in some cases, your supervisor
24    could say no, don't make that arrest or
25    undo that arrest?
```